UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| EDWARD and JANETTE BUNDY, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:07-CV-261RM |
| | ) | |
| TRANSPORT DESGAGNES, INC. and | ) | |
| M/V CATHERINE DESGAGNES, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| AMERICAN LONGSHORE MUTUAL ASSOCIATION, | ) | |
| | ) | |
| Intervenor-Defendant | ) | |

OPINION AND ORDER

At the October 19 final pretrial conference, the court heard argument on the parties' motions in limine and took those motions under submission. The defendants had no objection to the following aspects of the Bundys' motion:

- **Point 1**, which simply seeks a separation of witnesses under Fed. R. Evid. 615;

- **Point 6**, which seeks exclusion of evidence that Mr. Bundy is receiving workers' compensation benefits as a result of this injury; and

- **Point 7**, which seeks exclusion of evidence that Mr. Bundy was arrested on several occasions (for drunk driving, marijuana possession, and fighting) in his early 20s.

The court grants the Bundys' motion as to those points.

**Point 2** of the Bundys' motion seeks to bar evidence that Mr. Bundy underwent an independent medical examination on January 30, 2003 following treatment in 2002 for a right shoulder injury. The accident at issue in this case occurred in September 2005. The Bundys say the exam and the contents of Dr. Juhasz's February 11, 2003 report are irrelevant, lack foundation, are hearsay, and are remote in time. Dr. Juhasz's analysis of Mr. Bundy's then-existing complaint of neck pain with radiating pain to his right hand led to a conclusion that Mr. Bundy's pain was unrelated to a 1980 incident in which he was struck in the neck by a pipe. The Bundys say the defendants have disclosed no doctor who can provide testimony to connect this report or its contents to any issue in this case. The Bundys also say they can't cross-examine the report, the examiner's methodology, or even challenge the examiner's qualifications or bias.

Mr. Bundy doesn't claim that the September 2005 fall caused the radiating pain to his right hand. Without an appropriate foundation and a qualified witness to connect Dr. Juhasz's findings to any condition Mr. Bundy presently suffers, the report is irrelevant hearsay if offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). The report also lacks the indicia of trustworthiness that underlies the exception for business records in Rule 803(6) because it wasn't prepared in the ordinary course of providing medical care to Mr. Bundy. *See* Lust v. Sealy, Inc., 383 F.3d 580, 588-589 (7th Cir. 2004); *see also* United State v. Blackburn, 992 F.2d 666, 670 (7th Cir. 1993).

Mr. Bundy, however, doesn't object to being cross-examined about his

medical history. If, through such cross-examination, the defendants are able to establish previous examinations and/or diagnoses, a factual record would exist to allow questioning of Mr. Bundy's current health care providers. Such questions could include whether current providers are aware of the prior injuries and treatments; their ignorance of such matters would go to the weight to be given their opinions.

Accordingly, Dr. Juhasz's IME would be inadmissible unless its occurrence is established through a witness with knowledge, like Mr. Bundy. Once established, it might be used for non-hearsay purposes. The court grants the Bundy's motion on the purest of interlocutory bases: counsel shall not refer to Dr. Juhasz's IME without first informing the court out of the jury's hearing why they believe the inquiry will be appropriate with respect to a particular witness.

In **Point 3** of their motion, the Bundys seek to bar evidence of Mr. Bundy's Workers' Compensation claims made before the Longshoreman's claim involved in this case, arguing that any such claims are irrelevant and unrelated to parts of the body at issue here, lack foundation, and are prejudicial. In **Point 4** of their motion, the Bundys ask for exclusion of evidence that the Veterans Administration granted Mr. Bundy a disability benefit on December 12, 2007 arising from service-connected injuries to his left knee and tinnitus in his ears, for the same reasons stated in Point 3. The Bundys say there is no evidence that the condition of Mr. Bundy's left knee or the condition of tinnitus disabled him from his employment duties before the 2005 fall. In **Point 5** of their motion, the Bundys ask that the

3

defendants be barred from introducing any evidence that in March 2006, Mr. Bundy was granted a Social Security disability award.

Those motions are well-taken. That Mr. Bundy was receiving collateral benefits is irrelevant, and questions about his earlier medical conditions already have been discussed.

In **Point 8** of their motion, the Bundys ask to preclude all evidence relating to Mr. Bundy's assignment to "light duty" work during his recuperation from right shoulder surgery in January 2003. The court agrees. Information about that work assignment bears no relationhip to the work that was available to Mr. Bundy following his injury in September 2005 injury.

In **Point 9** of their motion, the Bundy that the defendants' expert witness, James Wilson, be barred from rendering opinions that merely adopt the factual testimony of the crew of the vessel (that is, that the only rope on the gangway was the "grommet" tied tightly around the outer rail of the gangway, over which Mr. Bundy could not have tripped). The Bundys say that such testimony, couched in the form of an opinion, is impermissible because it doesn't require the use of any expertise beyond the jury's assessment of the credibility of the fact witnesses, but rather merely seeks to bolster the version professed by the defendants.

The Bundys cite McCloughan v. City of Springfield, 208 F.R.D. 236, 239-240 (C.D. Ill. 2002) ("the Court believes that, if it were to allow Katsaris to offer his opinion in this case as to whether Patterson or Tavernor followed proper police procedures, the Court, in essence, would be allowing Katsaris to, as an expert,

make and relay credibility findings to the jury regarding the witnesses' testimony. Such testimony is improper and is not helpful to the jury."); United States v. Lundy, 809 F.2d 392, 395 (7th Cir. 1987) (holding that "'expert' testimony based solely on hearsay and third-party observations that are adequately comprehensible to lay people would be improper to admit under Rule 702"); United States v. Romero, 57 F.3d 565, 571 (7th Cir. 1995) ("We hold only that the operations in question must have esoteric aspects reasonably perceived as beyond the ken of the jury and that expert testimony cannot be used solely to bolster the credibility of the government's fact-witnesses by mirroring their version of events.").

The Bundys say Captain Wilson's proffered opinions would simply reiterate the testimony of the vessel crew that the only rope near the upper end of the gangway was the "grommet" and that that rope wasn't in a position to have tripped Mr. Bundy. Thus, the Bundys say, Captain Wilson offers nothing that qualifies as scientific or technical information that would aid the jury.

Expert testimony is available when scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence, or to determine a fact in issue. FED. R. EVID. 702; Roback v. V.I.P. Transp. Inc., 90 F.3d 1207, 1215 (7th Cir. 1996) (affirming district court's exclusion of preferred expert testimony about what a driver would see and do in the few seconds before a collision); Taylor v. Illinois Central R.R. Co., 8 F.3d 584, 585-586 (7th Cir. 1993) (affirming exclusion of an opinion that smaller ballast rock would have provided

5

better footing).

The defendants say Captain Wilson won't be testifying as to the truthfulness of the witnesses or as to which witnesses ought to be believed. He may properly base his opinions upon the specific testimony of the fact witnesses and how they bear on the duty to provide a safe gangway, so long as he states that these are the bases for his opinions, and why they are bases for his opinions, regarding the proper maritime procedure to provide a reasonably safe gangway and whether that procedure was followed.

An expert can assume certain facts and base his opinions on those facts as long as he isn't vouching for the credibility of witnesses. In Fafara v. McMahon, No. 2:03-CV-514, 2006 WL 5086618, at *4 (N.D. Ind. Apr. 6, 2006), Magistrate Judge Rodovich noted that "[i]n a case involving factual disputes, there is an important distinction between an expert witness stating an opinion on the credibility of a witness and an expert witness assuming some facts as true as the basis for the expert opinion. An expert witness is entitled to do the former, but not the latter." Therefore, while an expert can base his opinion on the assumption of certain facts, he can't state an opinion on the credibility of witnesses. Magistrate Judge Rodovich concluded that

> Dr. Friedell and the three members of the panel will be permitted to base their opinions on the assumption that certain facts occurred. . . . . Once the jury has resolved the underlying factual dispute between the parents and Dr. McMahon, it can determine which medical opinion should be accepted. This permits each expert witness to identify the factual basis for his opinion and the jury to discharge its duties of resolving those factual disputes. However, the expert

6

> witnesses will not be permitted to state an opinion on the credibility of any other witness.

Fafara v. McMahon, 2006 WL 5086618, at *5. *See, e.g.,* United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994) ("Generally, the use of expert testimony is not permitted if it will usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it. When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury."). Although "Fed. R. Evid.704(a) provides that 'otherwise admissible' opinion testimony is not rendered inadmissible because it embraces an ultimate issue, . . . legal conclusions are not 'otherwise admissible' under Rule[ ] . . . 702 because they are not helpful to the trier of fact." Paradigm Sales, Inc. v. Weber Marking Sys., Inc., 880 F. Supp. 1247, 1255 (N.D. Ind. 1995).

Captain Wilson's opinions, as set forth in his report, are these:

**Opinion One:**
There is no rope that would be located in the positions described either by Mr. Bundy or Mr. Lane as part of the gangway system. Any rope located in the either position described would be in plain view, be unusual, and thus readily apparent to the vessels crew members and longshoremen familiar with the vessel when embarking or debarking the ship. In my opinion no gangway related rope would contribute to Mr. Bundy's fall while walking on the gangway steps.

\* \* \*

**Opinion two:**
The location of the rope as marked on Exhibit B1 would be obvious to anyone going up the accommodation ladder as it would cross his field of vision and, being described as yellow or brown, would stand out against the aluminum background of the step. The gangway watch, whose duty was to maintain the safety of the accommodation ladder would have recognized the hazard and taken steps to correct it.

7

> Neither of the watch standers stated they saw any such rope during their pre-watch inspection or their traversing the accommodation ladder during their watch. Longshoremen, who have a reputation for pointing out hazards to the crew members would have noted such an obvious hazard and neither gangway watch stated they received any such complaint. in my opinion the the two markings of the location of the rope observed by Mr. Lane and Mr. Bundy are both in error and no such rope existed at that location at the time of Mr. Bundy's fall.
>
> * * *
>
> **Opinion three:**
> It Is my opinion this grommet was the rope referred to by Mr. Bundy and Mr. Lane. Considering the grommet being in the general area of Mr. Bundy's fall it is my opinion it was misidentified as the cause of the fall.
>
> * * *
>
> **Opinion four:**
> The failure of Mr. Bundy to fulfill his safety responsibilities to report a hazard to any of the ship's personnel cannot be understood in light of his testimony as to the hazard.
>
> * * *
>
> **Opinion five:**
> Considering his statement as to the right foot being the tripped foot, and the location of the only low lying rope nearby, the grommet, it is my opinion the cause of Mr. Bundy's fall was a source other than the rope suspected by both Mr. Bundy and Mr. Lane. The cause was Mr. Bundy's lack of attention while stepping from the platform to the stair treads, combined with his failure to grip the hand rail for support before stepping off.

Most of Captain Wilson's observations and opinions serve as conduits for statements of the crew members (who weren't witnesses to the fall) and his legal conclusions seem to be based on those witnesses' proposed testimony, and legal conclusions as to ultimate issues generally do not assist the trier of fact because they simply tell the trier of fact what result to reach. Such opinions are not helpful to the trier of fact under this case's circumstances

Captain Wilson may testify that if the gangway configuration was as the

crew describes it, "There is no rope that would be located in the positions described either by Mr. Bundy or Mr. Lane as part of the gangway system. Any rope located in the either position described would be in plain view, be unusual, and thus readily apparent to the vessels crew members and longshoremen familiar with the vessel when embarking or debarking the ship." That opinion would assist the trier of fact because it applies Captain Wilson's expertise (25 years in the Coast Guard, 18 of which were in fields of ship inspection) to facts the trier might find. So, too, with Captain Wilson's opinion that if the rope were in the position marked on his exhibit BI, "The location of the rope as marked on Exhibit B1 would be obvious to anyone going up the accommodation ladder as it would cross his field of vision and, being described as yellow or brown, would stand out against the aluminum background of the step."

The rest of the opinions contained in Captain Wilson's report amount to nothing more than that he believes the facts set forth by the crew are more likely true than those set forth by Mr. Bundy. Those are questions the jury will be as well-suited to resolve, making Captain Wilson's opinions unhelpful, and so inadmissible under FED. R. EVID. 702.

2.

The defendants' motion in limine seeks exclusion of testimony by co-plaintiff Janette Bundy about her emotional distress over her own physical condition (the defendants believe she has cancer) or over the alleged injuries to her husband,

9

Edward Bundy. The defendants say Mrs. Bundy's testimony about her emotional distress relating to her own physical condition or that of her husband is prejudicial, irrelevant, and not an element of damages awardable as part of Mrs. Bundy's loss of consortium claim. Loss of consortium, the defendants argue, consists of loss of the injured person's services, society, companionship, affection, love, advice, guidance, or sexual relations, but that claim doesn't include grief or mental anguish, citing to Fifth Circuit Pattern Jury Instruction Civil 4.9 (Loss of Society), which states that the loss of society "covers only the loss of love, affection, care, attention, comfort, protection and sexual relations the spouse has experienced. . . . And it does not include grief or mental anguish."

The court agrees that Mrs. Bundy's emotional distress relating to her own physical condition or that of her husband is irrelevant, but she might testify permissibly about her emotional distress as it relates the loss of her husband's services, companionship, affection, love, and so on. *See* Dearborn Fabricating and Engineering Corp., Inc. v. Wickham, 551 N.E.2d 1135, 1137 (Ind. 1990) ("The other elements – love, companionship, affection, society, comfort, services and solace – . . . are deserving of protection."). This issue, then, boils down to a matter of elements of damages to be included in the jury instructions; no order in limine can cut finely enough to address the admissibility of testimony. If the defendants are to find protection in the Rules of Evidence, it must come in the opportunity to request a limiting instruction. *See* FED. R. EVID. 105.

3.

Finally, the defendants seek an order preventing the Bundys from referring to any type of destruction or spoliation of evidence or instructing the jury on spoliation. The defendants claim that although a crew member cut off and discarded a section of rope (which they say was secured around the upright length of the gangway and wasn't located where Mr. Bundy says he tripped) less than an hour after Mr. Bundy's fall on the vessel's gangway, the rope section was removed "in the mistaken belief that Edward Bundy had tripped on the rope loop." They say, too, that the action of removing the rope "constituted a subsequent remedial measure to remove a perceived tripping hazard mistakenly believed to have caused Bundy to trip and fall, with minor or no injury. At the time that the rope was cut off no one requested photographs or that the rope be preserved. It would be highly prejudicial to defts to allow pltfs the presumption that the disposal of this rope was done with the intent to destroy evidence. There is no supporting evidence that this loop of rope had anything to do with pltf's trip and fall."

The Bundys respond that the jury must decide whether Mr. Bundy tripped over the rope. Captain Casaubon learned about Mr. Bundy's fall from Mr. Bundy and Victor Lancer and believed at that point that it was the defective gangway condition that caused the fall, and that's why he ordered the rope loop removed. The Bundys say he should have taken a photograph and steps to preserve the evidence.

The Bundys argue that defendants "gratuitously claim, without any

11

evidence, that the Captain had no reason to believe a claim might ensue," but Captain Casaubon has been trained and taken exams on what a Master should do in the event of an injury on his vessel. Mr. Bundy says that following his fall he had to be helped from the gangway, his left ear was bright red, he was bleeding on his left leg, and he was being sent to the hospital: "[t]hat Cpt. Casaubon knew these facts is indisputable – he admits to having actually spoken to Mr. Bundy as he sat on the back of the pickup truck." Captain Casaubon also spoke to Mr. Lancer at about the same time and learned of Mr. Bundy's complaints of pain in his left shoulder. The jury should be able to decide whether Captain Casaubon should reasonably have anticipated the possibility of a claim.

A party seeking an adverse inference instruction must present evidence sufficient to support a finding that the adverse party intentionally destroyed evidence in bad faith. <u>Missis v. Howard</u>, 106 F.3d 754, 762-763 (7th Cir. 1997). Bad faith requires "a state of mind affirmatively operating with a furtive design or some motive of interest or ill will. It contains the element of intent to do wrong in some degree, actual or necessarily infer able." <u>Seelig v. First Nat. Bank of Chicago</u>, 20 F. Supp. 61, 68 (N.D. Ill. 1936). In <u>Faas v. Sears, Roebuck & Co.</u>, 532 F.3d 633, 644 (7th Cir. 2008), the court of appeals explained that to draw an inference that certain destroyed documents contained information adverse to Sears, the court must find that the party "intentionally destroyed the documents in bad faith. . . [T]he crucial element is not that evidence was destroyed but rather the reason for the destruction. A document is destroyed in bad faith if it is destroyed 'for the

purpose of hiding adverse information."

In other federal maritime cases, courts have held that the loss of evidence shortly after accidents is not spoilation. In Fruge v. Parker Drilling Co., 337 F.3d 558, 566 (5th Cir. 2003), where a hose caused plaintiff to be injured, the court opined, "the hose was lost before the suit was filed when no such order to preserve evidence had issued. Moreover, plaintiff presented no evidence suggesting bad faith on the part of defendant. According[ly] we discern no error in district court's decision to dismiss [defendant] despite plaintiff's arguments regarding spoilation of evidence." In Bunge Corp. v. Freeport Marine Repair Inc., 240 F.3d 919, 922 (11th Cir. 2001), the court was unable to assign liability because it was unable to determine how a barge damaged in a hurricane was moored, where the mooring cables that broke were not preserved and thus not in evidence. The court refused to find spoliation of evidence, finding instead that the cables were disposed of in the process of cleaning up the grounds immediately following the hurricane.

The court agrees with the defendants. The record before the court suggests no basis for a finding that the rope was removed in bad faith, so the law doesn't support an argument or jury instruction on spoliation.

4.

For these reasons, the court rules as follows on the parties' motions in limine:

    a. With respect to the plaintiffs' motion (doc. #78), the court GRANTS

the motion with respect to Points 1-8 and GRANTS the motion IN PART with respect to Point 9;

      b. the court DENIES the defendants' motion in limine with respect to Janette Bundy's emotional distress claim (doc. #75); and

      c. the court GRANTS the defendants' motion in limine with respect to spoliation (doc. #79).

None of these rulings are intended to be final. They simply preclude mention of the affected evidence or topic within the jury's hearing before the topic is addressed anew outside the jury's hearing.

      ENTERED:  <u> October 23, 2009 </u>

<u>    /s/ Robert L. Miller, Jr.    </u>
Chief Judge
United States District Court