# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| EDWARD W. BUNDY and <br> JEANETTE BUNDY, <br><br> Plaintiffs, <br><br> and <br><br> AMERICAN LONGSHORE MUTUAL <br> ASSOCIATION, <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> TRANSPORT DESGAGNES, INC., et al. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 2:07-CV-261 JVB <br> ) <br> ) |

**OPINION AND ORDER**

This matter is before the Court on Defendants' renewed motion for judgment as a matter of law or for a new trial or for remittitur (DE 124).

**A.    Background**

On September 4, 2005, the motor vessel *Catherine Desgagnes* was moored at Burns Harbor, Indiana, on Lake Michigan when Plaintiff Edward Bundy, a longshoreman who was on the ship, fell on the gangway while disembarking. This lawsuit followed. In their complaint, Plaintiffs pleaded diversity jurisdiction, but both parties agree that the Court also has maritime jurisdiction under 28 U.S.C. § 1333.

Defendants moved for summary judgment, which Judge Robert Miller denied, whereupon the case was transferred to the undersigned for trial. On November 6, 2009, the Jury returned a special verdict for Plaintiff. The Jury awarded Edward Bundy $175,000 for the

nature, extent, and duration of the injury; $850,000 for pain, discomfort, suffering, disability and anxiety, including any aggravation of a pre-existing condition, experienced and reasonably probable to be experienced in the future; $400,000 for past medical care and the cost of necessary medical care probable to be incurred in the future; and $450,000 in past and future lost wages. It awarded Janette Bundy $200,000 for the loss of her husband's society. Finally, the Jury found that the part that Edward Bundy's own negligence played in causing his injury was twenty percent.

At the close of Plaintiffs' case Defendants orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. The Clerk entered judgment on the jury verdict on December 8, 2009. Pursuant to Federal Rules of Civil Procedure 50 and 59, on January 5, 2010, Defendants renewed their motion for judgment as a matter of law and included an alternative motion for a new trial or remittitur.

**B.     Legal Standards**

**1.     *Rule 50 Standard***

A judgment as a matter of law is granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving

2

party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead it must ask whether any reasonable jury could have found for the Plaintiff. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578–79 (7th Cir. 2003).

**2.     *Rule 59 Standard***

Under Rule 59(a) a court may grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." A new trial should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience." *Davis v. Wisconsin Dept. of Corrections,* 445 F.3d 971, 979 (7th Cir.2006). A new trial may be ordered when the court erred in admitting evidence such that a party's substantial rights were violated, *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608-9 (7th Cir. 2006); when the jury was confused or misled because the jury instructions did not adequately state the law, *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001); when the verdict was against the manifest weight of the evidence, *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006); or when the damages awarded were "monstrously excessive" or lacking rational connection to the evidence. *Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1395 (7th Cir. 1994). The decision to order a new trial is within the sound discretion of the trial court. *Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems*, 428 F.3d 706, 716 (7th Cir. 2005).

**C.    Analysis**

**1.    *Motion for Judgement as a Matter of Law***

Defendants argue for judgment as a matter of law because, as they see it, there was no evidence that Defendants knew, or in the exercise of reasonable care should have known, of the defective condition—a rope across a gangway step—that caused Edward Bundy to fall on the gangway. The Court disagrees. At least four witnesses saw a rope on the gangway. It is reasonable to infer that a member of Defendants' crew put the rope there, since Defendants were in control of the gangway. Edward Bundy saw a rope across the top step of the gangway when he first boarded the vessel at 6:00 am the morning of the accident. Moreover, the Jury was entitled to disbelieve the testimony of wheelsman Rennie, whose job it was to watch the gangway, that there was no rope on the gangway from 6:00 am to 11:00 am, when Edward Bundy fell. The fact that no one else reported tripping on the rope until Edward Bundy fell does not, as Defendants claim, establish that the rope was "indisputably not there." There was ample evidence to permit the Jury to find that a rope across the gangway— that Defendants knew or should have know about—caused Edward Bundy's fall.

**2.    *Motion for Remittitur or a New Trial***

Defendants' first argument for remittur or a new trial is that the Jury awarded $232,379.94 for future medical expenses without any evidence as to what Edward Bundy's future medical expenses would be.[1] Defendants correctly point out that the substantive law

---

[1] The jury awarded $400,000 in past and future medical expenses. The parties had stipulated at trial that his past medical expenses were $167,620.06.

4

governing the case is maritime law, and that non-maritime law should be considered only if there is no maritime case law on point. However, they then rely on one maritime case and a case decided under the law of Puerto Rico, neither of which is directly on point. *See Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1427–28 (5th Cir. 1988); and *Mejias-Quiros v. Maxxam Property Corp.*, 108 F.3d 425, 427–428 (1st Cir. 1997). In both those cases, experts assigned a specific dollar amount to future medical expenses but the jury awarded more.

In contrast, the evidence in this case established that in the four years between his fall and the trial Edward Bundy incurred more than $167,000 in medical expenses for arthroscopic procedures on his right knee and left shoulder, a cervical spinal fusion, physical therapy, medications, and injections. There was also testimony that he would need bilateral knee replacements in the future and that he regularly takes pain relief medications, as well as evidence that his life expectance is twenty years. The evidence afforded a reasonable basis from which the Jury could award a sum for future medical expenses amounting to roughly one and one-half times the medical expenses he had incurred up to the date of the trial. Moreover, Defendants have failed to cite authority from any jurisdiction that would preclude the Jury from using past medical expenses and testimony as to future medical needs to extrapolate a figure for future medical expenses. This Court declines to institute such a rule.

Because the Court finds the award of approximately $230,000 dollars in future medical expenses is justified by the evidence, it follows that the Court also rejects Defendants' argument that the award is so out of line that it is evidence that the jury acted out of sympathy to Plaintiffs and prejudice against Defendants. Accordingly, no new trial will be granted on that ground.

Defendants also contend that the award of $200,000 to Janette Bundy for loss of her

husband's society is so excessive that it suggests the Jury acted out of prejudice, largely relying on cases the most recent of which are at least twenty years old.

In determining whether to grant a new trial on the grounds that a damage award is excessive, courts consider whether the award was "monstrously excessive" or lacks any rational connection to the evidence. *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). A court may also compare the award with damage awards that were upheld in similar cases, although such comparisons are rarely dispositive, given the fact-specific nature of damage claims. *Id.* Moreover, the required "rational connection" between the evidence and the award does not require mathematical exactitude, especially in a case where the damages are awarded for injuries of a type that is difficult to quantify, such as pain and suffering, or as in this case, loss of society. In such cases it is left to the jury to select a dollar amount that it believes will fairly compensate the plaintiff. *Id.* at 892–93.

At trial the Bundys testified to the changes in their marriage since Edward Bundy's fall in terms of Edward Bundy's disposition and the activities they could no longer engage in as a couple. An award of $10,000 per year in compensation for Janette Bundy's loss does not impress the Court as being either monstrous or irrational.

Defendants next argue that the apportionment of eighty percent of the fault for Edward Bundy's accident to them is against the manifest weight of the evidence, and is therefore grounds for a new trial. Once again, the Court is unconvinced. The evidence from which fault could be assigned to Edward Bundy is that he saw a rope across the gangway as he boarded the vessel at 6:00 am, but told no one about it. As the terminal head checker for the stevedoring company he was responsible for duties included promoting and enforcing company, union, and O.S.H.A.

6

safety rules and regulations on the vessel.  He knew that the gangway steps were rounded and hard to walk on, but did not have both hands on the handrails when he fell.  Even so, the Jury reasonably could have found that Defendants' employees failed to remove a tripping hazard that they knew or should have known was on the gangway over a period of five hours, while Edward Bundy was chargeable only with fleeting inadvertence in failing to report the rope or to use both handrails.  The Court cannot say that the Jury's apportionment of fault is against the manifest weight of the evidence.

Defendants next claim that the award of $850,000 for past and future pain and suffering is excessive.  They call attention to Edward Bundy's pre-existing injuries to his neck and left knee and osteoarthritis.  Plaintiffs respond that he was asymptomatic and did not require medical care except for an occasional trip to the chiropractor before the fall.  After the fall, he could no longer work and is in chronic pain from injuries to both knees, his right shoulder and neck and is facing additional surgery in the future.

Once again, many of the cases cited by Defendants to show that the award is out of line with awards in similar cases are so old as to be of little value as comparators.  Moreover, the more recent cases they cite are both factually distinguishable and at the same time not so out of line with the award in the instant case as to call it into question. The Court does not find the award for pain and suffering so large as to lead to the conclusion that sympathy for Edward Bundy, rather than the evidence, drove the Jury.

Finally, Defendants argue that the totality of what they characterize as the unfair awards and the inexplicable apportionment of fault supports their motion for a new trial.  The Court finds that whether taken individually or collectively, the damage awards and apportionment of

fault as determined by the Jury are neither monstrously excessive nor irrational. Accordingly, the Jury verdict will stand.

**D.     Conclusion**

Defendants' motion for judgment as a matter of law or for a new trial or for remittitur (DE 124) is DENIED.

SO ORDERED on June 9, 2010.

 s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge